**Bohn v. Schell**

C.P. of Berks County, no. 97-3682.

*Gary L. Dorsett,* for plaintiff.
*John M. Stott,* for defendant.

SCHMEHL, P.W., *J.,* September 10, 1998—In this custody matter, Father simply wants visitation with the parties' child, whereas Mother desires to move to Ohio with the parties' child and, in any case, wishes Father's visitation to be limited. Before a determination on visitation can be made, the court must determine whether Mother shall or shall not be permitted to move to Ohio with the parties' child.

The court must consider several factors in determining whether to permit the custodial parent to relocate at a significant geographical distance. Initially, the custodial parent has the burden of showing that the move is likely to significantly improve the quality of life for that parent and the children. *Gruber v. Gruber,* 400 Pa. Super. 174,

184, 583 A.2d 434, 439 (1990). Relocation will not be permitted if the decision was based on a momentary whim on the part of the custodial parent. *Id.* "[E]ach parent has the burden of establishing the integrity of his or her motives in either desiring to move or seeking to prevent it." *Id.* at 186, 583 A.2d at 440. "The court must assure itself that the move is not motivated simply by a desire to frustrate the visitation rights of the non-custodial parent or to impede the development of a healthy, loving relationship between the child and the non-custodial parent." *Id.* at 185, 583 A.2d at 439. The court must also consider the motives of the resisting non-custodial parent. *Id.* Finally, the court must consider the availability and adequacy of realistic substitute visitation arrangements which would foster an ongoing relationship between the child and the non-custodial parent. *Id.*

Mother testified that she had gone to Cincinnati, Ohio as a getaway for three weeks. She stayed with another couple and their child. These people were Father's friends and, according to his testimony, Mother did not like them. While staying in Ohio, Mother asserts she received a job offer and made arrangements to live with her friends until she could find a place of her own. She found that the environment in Ohio was healthier, cleaner, that there were no drugs or shootings, that the cost of living was lower, and that the school was a block away. Mother testified that it was never her intent, stated or otherwise, to frustrate Father's visitation with their child. Father, on the other hand, testified that Mother has always tried to frustrate his visitation and specifically told him that frustrating his visitation was the reason for her planned relocation to Ohio. Father also testified that he did not wish for his child to be relocated to Ohio absent a sufficient visitation plan.

The court does not believe that Mother has met her burden and at this time shall not allow Mother to relocate to Ohio with the parties' child. Mother's motives for the move do not appear to be completely pure, and she did not present evidence sufficient to demonstrate that the quality of her and the child's lives would be substantially improved by the move. The move does not appear to be in the child's best interest. Mother's job offer has since expired and she has offered no proof that she could not obtain a similar position with a similar salary here in the local region. Furthermore, and although temporary, Mother's living arrangements would not seem to be adequate. Three adults and three children living in what Mother described as a two and three-quarter bedroom townhouse for an unspecified period of time does not strike the court as being a healthy and secure living arrangement for the parties' child. Additionally, the court finds it hard to believe that Cincinnati, although composed of neighborhoods with differing qualities and standards of life, has no drugs or shootings. Even if she has found such a neighborhood in Cincinnati, she apparently made no effort to find a neighborhood with similar qualities within a reasonable distance of the parties' current residences. Finally, the parties' families and friends are here in Berks County and, with the exception of the couple with whom Mother intends to reside, she has no other friends or family in Ohio.

Mother's planned relocation to Ohio appears whimsical, with a flavor of frustration of Father's visitation with their child. Mother testified that, if permitted to relocate, a visitation schedule for Father in the nature of one weekend per month would be sufficient. The

court disagrees because this would be unlikely to adequately foster an ongoing relationship between Father and the child. In denying Mother's request for approval to relocate to Ohio with the parties' child, the court also finds that Father should be granted regular visitation with the parties' child so as to re-establish and maintain an ongoing relationship between them.

Although the court finds that Mother wants to frustrate Father's visitation and has done so in the past, the court has not heard anything regarding Mother's willful failure to comply with the custody order. Father's petitions for contempt are dismissed.

For the foregoing reasons, the court enters the following order:

## ORDER

And now, September 10, 1998, it is hereby ordered and decreed that custody of the parties' minor child, Darius S. Bohn, date of birth October 22, 1996, shall be as follows:

(1) The parties shall have joint legal custody of the child.

(2) Mother shall have primary physical custody of the child.

(3) Father shall have partial physical custody of the child as follows:

(a) Alternate weekends from Thursday at 5 p.m. to Sunday at 7 p.m. The first two weekends for which Father has partial physical custody, his custody shall be exercised for eight hours per day for Friday, Saturday, and Sunday with no overnights and, thereafter, all following periods of partial physical custody shall proceed normally as stated above. Father's weekend visitation shall commence the weekend of September 19, 1998.

(b) If, for whatever reason, Father is unavailable to pick up the parties' child, his mother or his grandmother shall be permitted to do so.

(c) Transfer of custody shall occur at a location agreed upon by the parties. If they are unable to agree on a location, pickup and drop-off of the child shall occur at the child's maternal grandmother's house.

(4) Mother shall have custody of the minor child on Mother's Day and Father shall have custody of the minor child on Father's Day each year from 10 a.m. to 6 p.m.

(5) The parties shall alternate custody on the following named holidays as follows: in the even-numbered years, Father shall have custody from 10 a.m. to 8 p.m. on New Year's Day, Memorial Day and Labor Day, and Mother shall have custody from 10 a.m. to 8 p.m. on Easter, Independence Day and Thanksgiving. The holidays shall reverse in the odd-numbered years.

(6) The parties shall alternate the following time periods regarding Christmas: On odd-numbered years, Mother shall have custody of the child from December 24 at 2 p.m. to December 25 at 2 p.m., then Father shall have custody of the child on December 25 at 2 p.m. to December 26 at 8 p.m., with the parties to reverse schedules on even-numbered years.

(7) Father shall have custody of the child for three weeks vacation time each summer and two of those three weeks may be uninterrupted. Father shall give Mother at least 30 days notice of the weeks he intends to exercise his vacation option. Mother may likewise reserve two uninterrupted weeks for vacation each summer by giving 30 days notice to Father. If both parties seek to vacation with the child during the same time frame, the parent to give notice to the other first shall be given priority.

(8) The holiday and vacation schedules shall take precedence over the regular custody and partial custody schedule.

(9) At this time, Mother's request for approval to move to Ohio with the child is denied.

(10) Father's petitions for contempt filed of record on May 21, 1998 and June 4, 1998 are dismissed.

(11) In addition to any provisions which may be contained herein regarding custody and visitation, Father and Mother shall have the following rights with respect to the child: reasonable telephone calling privileges, access to report cards and other relevant information concerning the progress of the child at school, approval of extraordinary medical and/or dental treatment except in the case of any emergency provided such approval shall not be unreasonably withheld, approval of summer camp and schools provided that such approval shall not be unreasonably withheld.

(12) In the event of any serious illness of the child at any time, any party then having custody of the said child shall immediately communicate with the other party by telephone or any other means, informing the other party of the nature of the illness. During such illness, each party shall have the right to visit the child as often as she or he desires consistent with the proper medical care of said child. The word "illness," as used herein, shall mean any disability which confines the child to bed under the direction of a licensed physician for a period in excess of 48 hours.

(13) Each party shall immediately notify the other party before changing residence and provide the other party with her/his new address.

(14) Neither party will insult, disparage or downgrade the other party in the presence or hearing of the child,

nor shall they unduly influence the child against the other party.

(15) Certain rules of conduct generally applicable to custody matters are set forth in paragraphs (a) through (h), below, and are binding on all parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for amendment of the custody order. If these general rules conflict with the specific requirements of the custody order, the order shall prevail.

(a) No party will undertake nor permit in his or her presence the poisoning of the minor child's mind against any other party by conversation which explicitly or inferentially derides, ridicules, condemns, or in any manner derogates any other party.

(b) The parties shall not conduct arguments or heated conversations when they are together in the presence or hearing of their child.

(c) No party will question the child as to the personal lives of the other party except as is necessary to insure the personal safety of the child. In other words, the child will not be used as a spy on the other party. It is harmful to a child to be put in the role of a "spy."

(d) No party will make extravagant promises to the minor child for the purposes of ingratiating himself or herself to the minor child at the expense of the other party. Any reasonable promise to the child should be made with the full expectation of carrying it out.

(e) The parties should at all times consider the child's best interests, and act accordingly. It is in a child's best interest to understand that he or she is trying desperately to cope with the fact of his or her parents' separation, and needs help in loving both parties, rather than interference or censure.

(f) The parties should remember that they cannot teach their child proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the party who maintains a double standard will lose the respect of his or her child.

(g) Periods of custody shall be subject to the following rules:

(1) If a party finds himself or herself unable to keep an appointment, he or she should give immediate notice to the other party, so as to avoid subjecting the child to unnecessary apprehension and failure of expectations.

(2) The party having custody of the child should prepare her both physically and mentally for the visitation with the other party and have her available at the time and place upon which the parties agree.

(3) If either party or the child has plans which conflict with a scheduled visit and wish to adjust such visitation, the parties should make arrangements acceptable to the schedules of everyone involved. Predetermined schedules are not written in stone, and both parties should be flexible for the sake of the child.

(4) If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.

(h) During the time that the child is living with a party, that party has the responsibility of imposing and enforcing the rules for day-to-day living. However, unless otherwise ordered, both parents should consult with one another on the major decisions affecting the child's life, such as education, religious training, medical treatment, and so forth.